The next case is Navelski v. International Paper Company. Mr. Vazdeskis is here for the appellants and Mr. Tirani is here for the appellee. And Mr. Vazdeskis, you may begin. Thank you, Your Honor, and may it please the Court. I think that the briefs are all very well done and they submit 95 percent of the argument to you. So what I often do at oral argument is talk about something that may not be completely clear in the brief or is implicit in the brief. And it strikes me that there are four items I want to mention to you this morning that may assist in your rendering a decision. The first concerns Federal Rule of Civil Procedure 46. The second concerns a Catch-22 that is present in one of the defendant's arguments. Third, I'd like to clarify a couple of sentences in the brief that could be read both ways. And then finally, I want to talk to you about the Pottery Barn Rule, which is essentially the rule that is being debated on the strict liability count. So first on Federal Rule of Civil Procedure 46, it's a relatively new rule. It's entitled Objecting to a Ruling or Order. It's implicitly argued in all of our briefs, even though you do not see a single reference in any of the three briefs to FRCP 46. But it's argued in the SEC versus Diversified case does talk about that rule. It's called Objecting to a Ruling or Order, Rule 46, Objecting to a Ruling or Order. A formal exception to a ruling or order is unnecessary. When the ruling or order is requested or made, a party need only state the action that it wants the court to take or objects to along with the grounds for the like eight minutes. And I'm assuming you're referring to the admission of the FEMA grant application, right? Absolutely, Your Honor. Okay, that you failed to object or you requested a limiting instruction. And so International Paper argues that by doing that, even though you file a pretrial motion in limine, you waived your objection to the admission of the FEMA grant application. And what's your response to that? Yeah, the response on that point, Your Honor, is straightforward. They haven't cited a case that says that. If you look at the SEC versus Diversified case and the Ash versus Tyson case, the two cases upon which they rely, you will see that neither of them had a motion in limine prior to the trial that was ruled upon and as to which we completely objected to the 100 percent inclusion of the evidence or the 41 pages that were actually put in. And the court repeated during the course of trial, when we stood and objected a couple of times, that objection was preserved. So we made an objection to the entirety of the document, okay? And it was preserved. Now, we walk ahead and this is the Catch-22 that I was going to argue and I'm addressing it now. So a witness is called, the document is put up, and after International Paper had represented to the court that they were not going to put in any collateral source evidence, page 2 of that document, and I have the pin site in the brief, I'm sure you've seen it, page 2 of that document contains a summary of findings. And that's where it has the 27 homes and each of them have received $276,000 from the court. Well, it doesn't quite say that. It says that the cost of acquiring each property would be about that amount. It doesn't say that anybody has received any money yet, does it? Well, I think the fair implication is that 27 homes are being demolished and the cost is $276,000. It's a grant application and they're representing that it was approved. So I think it's a fair inference to say that at least 27 people, you know, receive, quote unquote, government handouts and that, you know, they're now coming back in and trying to, you know, take another bite at the apple for more money. I mean, I think the prejudice is present when you consider all those additional factors on top of Was the purpose of the introduction of this report in order to rebut a suggestion that had been raised in the plaintiff's case that the plaintiffs had no idea that they were building houses in a floodplain? The plaintiffs did offer such testimony. The report was to come in on this issue of whether or not, you know, there was any evidence in the case about whether this was a floodplain or not. But that was totally cumulative. I mean, everyone knew there was a there was in a floodplain. Everyone knew was there was a risk there. You put this document into evidence and it contains this harmful information and effectively it's completely cumulative. So I don't think it should have been allowed in because it had no I mean, it didn't really advance the ball any is what I'm saying. Well, it does. It goes beyond that, does it not? It also indicates that beside the fact that there had been historical flooding in the area, that there were multiple sources of the waters that caused the floods, which was clearly at issue in your theory of the case that this would never have occurred had the dam not breached. I think all of that is a causation issue. We never we never got to causation as to how much of the damage was caused by the dam as opposed to the rainfall, as opposed to other sources of water that went in there. I think those are excellent points. You know, they were argued during the trial. But aren't those material to the causation question? I mean, you're really arguing prejudice versus probative value, are you not? The balancing that the district court had to undertake. I mean, that's rule 403. But we're also arguing the substantive Florida rule that shouldn't have come in at all as a collateral source document, and we feel that's a substantive, not a procedural rule, and it should have been followed in this case. But to answer the specific question about, well, you know, we've made an objection, we've preserved the objection, and then later something arises, like they pull out page two, and it's up there for, I don't know, five or ten minutes when he's testifying, and we ask for a limiting instruction, at that point, Your Honor, we're in a catch-22. If you're saying that we can't request or act or agree to a limiting instruction to cure this later testimony that this gentleman, Mr. Christopher Kerb, is putting into evidence, we ask for a limiting objection, and if the argument from international paper is, well, if you ask for that limiting instruction, then you therefore waive your complete objection that you made to this document earlier, then we're not going to have an opportunity to ask for a limiting instruction. It's not fair. I mean, we've asked for it to be completely blocked. It came in any way, despite the representations of defense counsel. And what we're saying is we should also have the right to ask for a limiting instruction in order to cure any additional prejudice from the introduction of this document after it was put in. And the case that we cite is a federal case. I think your strongest argument, counsel, is not the fact that you've waived the objection, but that the limiting instruction that was given by the court in this case was insufficient to I think you've said it best, Your Honor. And if you look at the Botsford case, B-O-T-S-F-O-R-D, that we cite in our brief, it's precisely our fact pattern. That gentleman had objected. You're telling, because the judge is telling the jury, disregard the fact that the homeowners are probably going to receive $276,000 apiece from FEMA. Don't take that into consideration, ladies and gentlemen, in considering liability in this case. I think your strongest argument is that the limiting instruction was insufficient to cure the prejudice. You have stated that better than we probably wrote it or I'm arguing it. And you didn't object to the wording of that instruction, did you? No, we did not object to the wording of the instruction. That's correct. So why haven't you waived the argument as to the efficacy or adequacy of the instruction that the court gave? Because in the Botsford case, which I've cited, it's this exact fact pattern where a gentleman has objected to the entirety of a document. It comes into evidence. He preserves his objection under Botsford. Then a limiting instruction is brought up. He clarifies, as we did, that we're not waiving our original objection. The court notes that. And he's allowed to, and he agreed to the language in that limiting instruction, too. And he didn't have to face the catch-22 of... I don't see the catch-22 if the proper way to do it is to say not only do I object to the admission because it's prejudicial and substantively covered by Florida law, but I also object to what you're going to tell the jury. And here's the language that we would propose in lieu of what you're proposing to do, Your Honor. Then you clearly would have preserved your objection to the wording of I may have waived my right to object to the limiting instruction, but I didn't waive my right to have that document in entirely. I realize that I'm over time. I've reserved five minutes. I'll continue these arguments on the back end. Thank you, Your Honor. All right. We'll hear from Mr. Tehrani. May it please the Court, Amir Tehrani for Defendant International Paper. None of plaintiffs' three grounds for challenging the jury verdict in this case warrants overturning the outcome of the five-day jury trial. I'd like to start with the collateral source issue. Plaintiff's argument with respect to the FEMA grant application is flawed in multiple respects. The argument is waived, but it also relies on a misinterpretation of the $276,000 figure. It's also inconsistent with Florida's collateral source rule, which has an exception covering this very situation, and any error would be harmless for multiple reasons. On the waiver point, plaintiffs did object pre-trial to the FEMA grant application, but when the evidence was introduced at trial, they then requested a limiting instruction, and that limiting instruction was broad. It was ironclad. It told the jury. What should they have done then? So the motion in limine was denied, so the collateral source evidence was going to be admitted. What should they have done then? They should have made clear to the district court, Your Honor, that in their view, no limiting instruction would be sufficient to remove the taint from the introduction of this district court's phrasing of the limiting instruction. That instruction told the jury. Well, this is a waiver issue. I cannot find a case that says that requesting a limiting instruction after an objection has been overruled waives the prior objection. Can you cite a case that stands for that proposition? Our best case on this issue, Your Honor, is this court's decision in SEC v. Diversified Corporate Consulting. There, the appellant sought to challenge the way in which the district court had dealt with an allegation of juror misconduct. The appellant sought to argue that the district court should have conducted a juror interview. Instead, the district court gave a curative instruction directing jurors not to the district court's decision not to conduct a jury interview. This court held that that issue was waived because the district court had given a limiting instruction and the appellant had refused and failed to object to that limiting instruction. That's precisely what happened in this case. But I'd also like to emphasize that there are multiple other grounds for rejecting plaintiff's collateral source argument. It's important to keep in mind that this $276,000 figure is one sentence in a 41-page document. It has the names and the addresses of all of the members of the homeowners who lived in the flood zone and it's got these figures in there. I mean, any intelligent person can look at this FEMA grant application and see that these homeowners are going to get a lot of money, right? I mean, that's pretty clear and I'm trying to figure out why it's necessary if it's to rebut their theory of causation that to show that the homeowners knew that they were in a flood zone. There's a lot, a lot of other evidence that establishes that. The zoning maps, the county records, the testimony from the surveyors, the county officials. Your Honor, the pages that you're referencing were not included in the 41-page grant application that was admitted at trial. The district court before trial ruled that collateral source information in this exhibit could not be admitted and that's the reason. So what was the purpose for admitting the FEMA grant application then? The purpose of admitting the evidence was to rebut plaintiff's theory that it was the breach of the Kingsfield Road dam structure rather than the location of these homes in a 100-year flood plain. And there was other evidence to establish that? There was other evidence. A lot of other evidence to establish it. IP mounted a robust defense on the causation issue, but this grant application was powerful evidence because it made clear that the county is so concerned about flooding in the class area that it applied to FEMA and obtained funding from FEMA to acquire and demolish these homes. Mr. Chris Kerb, who was the county stormwater engineer, testified that this application had absolutely nothing to do with IP or the Kingsfield Road dam structure. It had to with the fact that these homes are located in a 100-year flood plain and are going to flood again. So you can make the argument that the jury cannot look at this application and come to the conclusion that the homeowners have not been compensated? Absolutely, Your Honor. That's the reason that the district court directed IP to exclude several hundred pages from the grant application. The pages that you're referring to did not come in at trial. The exhibit that came in at trial is located at SA 629. Did the page come in at trial that reflected that the value of the damage to each homeowner was $276,000? That page did come in, but that reference is to average individual project cost. And what's important to bear in mind is that no witness and no attorney even mentioned this figure. So it's unlikely that the jury considered this $276,000 figure. It's also unlikely that they would have leapt to the conclusion that an oblique reference to average individual project cost meant that individual class members were receiving some portion of this provided an explicit, broad, ironclad limiting instruction that was unobjected to by the plaintiffs and that told the jury in no uncertain terms that it should not consider in any way whether any plaintiff received any proceeds from this grant program. You don't think that highlights even more the fact, I mean, that tells the jury they got other money, ladies and gentlemen of the jury, but don't factor that into your consideration. I don't believe it does, Your Honor. And if that was plaintiff's position, then they should have objected to the limiting instruction at trial. There are also multiple other reasons that any error with respect to the grant application is harmless, including this court's decision in 2018 in the ML Health Care case. In that case, this court made clear that any error with respect to damages issues. We're applying Florida law, right? And Florida's collateral source rule is strict. It's very strong. It says that any evidence of collateral source benefits is inherently prejudicial. That's what the Florida Supreme Court said in Juerg versus State Farm. It's inherently prejudicial. And it said social legislation benefits should not be admitted as harmless error standard is governed by federal law. And that's the standard that this court applied in the ML Health Care case, which was another diversity case. In that case, it was a Georgia collateral source rule that was at issue. And what this court held in ML Health Care, which is cited in our brief. Why are we applying federal substantive law rather than your honor with respect to whether the error in this case was harmless? That is a procedural question governed by federal law. The question of whether this grant application should have been admitted may be governed substantively by Florida law. But in determining whether there was harmless error and whether plaintiffs have met their burden of demonstrating prejudice, that is a question of federal law. In ML Health Care, this court concluded that collateral source evidence had been improperly admitted. But it concluded that the error was harmless because the jury did not reach the damages issue in the case. And the court held that collateral source evidence has prejudicial effect only with respect to damages issues because it can lead a jury to believe that there were no damages issues at all because this was a liability only issues class action. So any error with respect to the admission of the FEMA grant application and this single line in that 41 page application was harmless error because the issue of damages was not before the jury. There was also overwhelming evidence supporting the jury's conclusion that IP was not negligent in any respect with respect to the design, maintenance, and continued operation of the Kingsfield Road Dam structure. That is an additional reason that this error was harmless. It's simply not plausible that this one line in the grant application, not mentioned by counsel for either party, not mentioned by a witness, somehow prejudiced the jury's consideration of the evidence that it heard over the course of this five-day trial. And there was extensive evidence of the reasonable care that IP exercised with respect to every aspect of the operation of this structure. The plaintiffs in this court focused on a very narrow theory of negligence with respect to the sliding gate that IP made the decision in 2010 to take out of service. IP mounted a robust defense on that issue. The jury heard testimony from the IP environmental health and safety manager, Mike Steltenkamp, who testified that the sliding gate was an ineffective tool for conveying water because it required employees to walk out onto a catwalk in the forefoot by forefoot metal gate, thereby putting their own safety at risk. In light of the shortcomings with the sliding gate mechanism, IP made the decision to cut two notches in the top of the Kingsfield Road Dam structure and take the sliding gate out of service. John Taylor, who is the IP environmental engineer, testified that the notches that were cut in the top of the structure are more effective at conveying water than the sliding gate that was taken out of service. They convey more water than the sliding gate. They operate automatically without the need for employee involvement. Mr. Taylor testified that when these notches were cut, he notified the Florida Department of Environmental Protection, which oversees the operations of the Kingsfield Road Dam structure, and the Florida Department of Environmental Protection approved the decision to cut those notches in the top of the Kingsfield Road Dam structure. All of this evidence... I think, you know, I think I'm just speaking for myself. We've not previously conferred. I think I would agree with you that if the admission of the FEMA evidence was not error, then the court did not err by denying the motion for new trial because there was expert testimony at the trial reflecting that there were reasonable steps that were taken in order to avoid flooding, including the notch, you know, cutting the notches in the dam and the pipes underneath that were installed. But I am concerned about the Florida's collateral source rule is so strong. And the way I read, it's cited in the brief Sheffield versus Superior Insurance Company 2001 decision from the Florida Supreme Court. Am I reading this case wrong? Because the way I read it, the Florida Supreme Court says improper introduction of collateral source benefits is pretty much a per se reversal, even in a trial over liability and not damages because the evidence is considered so prejudicial. How do we get around the Florida Supreme Court's decision in that case? There are multiple ways, Your Honor. The Florida Supreme Court in the George decision, which is also cited in our brief, J-O-E-R-G, made clear that there is an exception to Florida's collateral source rule for evidence that rebuts a plaintiff's theory of the case. And that's directly what the other evidence that rebuts the plaintiff's theory of causation. This was probably the most powerful evidence because we have the County of Escambia applying to the federal government to acquire and demolish these homes because they are at such significant risk of flooding. Chris Kerb, the county stormwater engineer, made clear that there is a history of flooding in this area and that was the impetus for the international paper. But even if the exception identified in the George decision and applied in Citizens' Property Insurance v. Ash does not apply here, any error would be harmless for multiple reasons in light of the ironclad limiting instruction, in light of the overwhelming evidence that IP was not negligent, in light of the fact that no one at trial mentioned this $276,000 figure, and in light of this Court's decision in ML Healthcare, which makes clear that the prejudicial effect of collateral source evidence is limited to damages issues. There were no damages issues in this case. So the decision to admit this evidence was correct, but any error was harmless for multiple reasons. Thank you. All right. Thank you, Mr. Tirani. And Mr. Basudeikis, you've reserved some time for rebuttal. Thank you, Your Honor. I think the negligence issues and the collateral source issue have been fully addressed. I'd like to turn to strict liability, if I may. It's what I call the Pottery Barn Rule. That's essentially what strict liability is. It's contractual liability once there's been a finding of abnormally dangerous. I'm not sure we even talked about strict liability when... So... Did he? Nope. Nope. So why don't you just... That wouldn't be fair. So why don't we just limit your argument? We've got the briefs. We've got the arguments, the strict liability arguments in the brief. So limit your rebuttal to the introduction of the FEMA grant application evidence. Sure. Happy to do that. I think that the principal case that was put in front of you was about SEC versus diversified. And if you read it, it's a totally distinguishable case. The Botsford decision controls this case. And we did talk about negligence. So I sort of took a hint from Your Honor and what Your Honor's view on the negligence evidence was. I do want to make one point about that to the entire panel. This was a point argued by my colleague here. The notches. The notches versus the safety gate. There's an important factual distinction. I'm not talking about legal theories or anything like that. I'm talking about the practical consideration when you have 400 million gallons of water that was impounded upstream of a neighborhood. Did you have evidence of that? Of somebody computing 400 million gallons? I believe our expert calculated that. Yes, sir. He testified to that? I believe so. Yeah, that it was approximately that. I mean, not down to the gallon, but that evidence was put forth and we put those numbers in our brief. Because an acre foot of water is about 278,000 gallons, right? Yeah. And I guess I want to make it, this is the factual point that I wanted to make clear. There's a dam, but there's also ponds behind the dam. So it isn't just that there's a single dam here. The dam is for overflow from the ponds. And what we're saying on the negligence issue, it actually relates to the strict liability too, but I'm not going to argue the strict liability. But if you look very carefully at our brief, especially on page 10 of our reply, you see that we're saying that the failure to open that release gate, or what we call a safety gate or a release gate, I don't care what term anyone uses, and to lower the level of the water in the ponds behind the dam. They flow into the dam. Behind the dam and before the storm is the precise issue of negligence that we're talking about. There's no question, it's conceded that they never opened that safety gate. What opening that safety gate would do would be allow before the storm, which was its purpose as they testified why they had it. I know they've come up with the, you know, cutting the notches in the top of the dam theory, and I'll talk about that in a second. But the original purpose of that safety gate and why it was there is if you know a storm is coming, you want to have all of the ponds release their water into the dam and then have the overflow, you know, the overflow flow into the river, okay? So with the notches... Arguing that there was insufficient evidence to support the jury's negligence verdict or are you, is this a factor or argument on strict liability? I think on the facts go to both of them, go to both theories, Your Honor. So you want us to rule as a matter of law that no reasonable jury could have returned a finding of no negligence here? Is that what your argument is? That is one of our arguments. That's the first argument. It's a tough argument to make on appeal. I do realize it is a tough argument to make on appeal. I'm not saying it's an easy argument. All I'm trying to do is say that I just want to focus on the specific fact relating to this safety gate so that it's understood because I think at times at trial, there was a variety of testimony on it and it was ultimately clarified. But just for Your Honor's purposes, if you're going to reject the negligence argument on substantive evidence grounds, apart from the collateral source problem that we have in the case, I mean, obviously, that's your decision. I just want to put the evidence in front of you to say that that safety gate would allow those ponds to drain in and then drain through. Well, that's a tough argument to make when you have experts who testified at the trial that the and the releasing of the water through the pipes was a better way and a more effective way at releasing water. And so the jury was entitled to credit the testimony of the experts, weren't they? Your Honor, a jury, obviously, a jury can elect from one expert to another what they wish to So the dam has to be filled to the top in order to get that overflow. I'm talking about a situation where it never fills to the top because you've got the release gate flowing through. So I don't think that that point was contested. They said it was closed. All the experts agreed it was closed and all the experts agreed the purpose for it was to allow that water to flow through. So I think that's the issue. Thank you, Mr. Besteskis. Thank you, Your Honor. Mr. Tehrani, and the court will be in recess for 15 minutes. All rise. Mr. Dykman is here for the appellants. Mr. Mayfood for the appellees. Mr. Dykman, you may.